**CHANDRA L. PETERSON**
California State Bar No. 306935
**SEAN C. MCGUIRE**
California State Bar No. 319521
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Chandra_Peterson@fd.org
Sean_McGuire@fd.org

Attorneys for MR. BERNAL-SANCHEZ

UNITED STASTES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.: 20MJ20169-JLB |
|---|---|
| Plaintiff, | Hon. Jill L. Burkhardt |
| v. | Date: October 1, 2020 |
|  | Time: 9:00 a.m. |
| JHONATHAN VILMAR BERNAL-SANCHEZ, | **MOTION TO DISMISS THE COMPLAINT FOR DUE PROCESS VIOLATION** |
| Defendant. |  |

## I.   INTRODUCTION

Based on materials obtained through a subpoena that Mr. Bernal believes was issued in violation of Rule 17 and the local rules, the government informed counsel yesterday that it is investigating new charges against Mr. Bernal. According to the government, the decision to file new charges will not be made by the current trial date. In its email correspondence, the government also informed defense counsel that should Mr. Bernal choose to invoke his constitutional right to testify in his own defense, the government would question him about the conduct for which they seek to file separate charges.

Not only would the government's threatened cross-examination be irrelevant, this threat is a clear violation of Mr. Bernal's constitutional rights. The

coercive threat by the government substantially interferes with Mr. Bernal's decision to testify. The government's threat to bring new charges and question Mr. Bernal on those charges if he chooses to testify is a violation of due process and warrants dismissal of Mr. Bernal's complaint.

## II. STATEMENT OF FACTS

On July 13, 2020, the mother of Mr. Bernal's children ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exhibit B, Motion to Continue and Supporting Documents. Counsel filed a motion to continue Mr. Bernal's trial based on this test result and the fact that Mr. Bernal had contact with Ms. Chavez and their children on a daily basis. *Id.* In a declaration to the court, supporting counsel's motion, Mr. Bernal declared, among other things, that:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Exhibit B. Mr. Bernal's declaration did not state ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.*

Based on this information, counsel filed a motion to continue the scheduled bench trial. The basis for the motion, as stated within the first paragraph, was "in light of the safety risks this exposure poses to defense counsel, the Court, the government, court staff, and others present in the courthouse." *Id.* Counsel's motion was grounded in the Chief Judge's orders about who would be granted entrance into the courtroom and who would not be for safety reasons during the current pandemic. At time of the motion, the safety protocols issued by the order of the chief judge said that if someone had (1) been exposed to COVID-19 or (2) been ordered to quarantine, they would be denied entrance to the Courthouse. *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Counsel requested a continuance of the trial based on this.

2 The basis of this request was because the purpose of the Chief Judge's order
3 is to protect the court staff and community of individuals who work in the court
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] Therefore, if one is asked if they have been ordered to
5 self-quarantine and they respond yes, that is the end of the inquiry. The Chief
6 Judge's order does not then require CSO's to inquire whether the individual is
7 following those quarantine orders, the inquiry just ends. The individual is not
8 permitted on the premises for the safety of others. The purpose of the order is to
9 protect the court, the court staff who have worked so hard during this pandemic,
10 defense counsel, court interpreters, government counsel, and other defendants who
11 are attending their own hearings. Certainly, the strict adherence to this order –
12 denying access to individuals who have been in contact with someone who tested
13 positive for COVID-19, is one of the reasons our courtrooms have been spared from
14 an outbreak.

15 Simply put, Mr. Bernal made no claims or statements about whether he had
16 been able to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Bernal did not
17 make these statements, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮. This was also not the issue counsel rose in her motion to
19 continue though, nor was she trying to "artfully" craft statements to deceive this
20 court. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮.

24 In the afternoon of September 29th, 2020, the government emailed defense

---

[1] Indeed, this is a protection counsel herself appreciates because she lives and helps care for her significant other's mother who is elderly and has other medical risk factors. Counsel also would like to stay safe in the instances where her clients have been exposed to COVID-19 because if cases weren't continued she would to interact with them in order to effectively advocate on their behalf.

counsel about its intention to potentially file new charges against Mr. Bernal. *See* Exhibit A, Government Email Regarding Testimony and Charges. Although the government did not specify what charge it would file, based on the context of the email, it appears the government would charge Mr. Bernal with perjury based on the circumstances surrounding the first continuance of his trial in July. *Id.* It appears from the government's email it believes Mr. Bernal was untruthful with the Court in his motion to continue the first trial, although an actual lie is not alleged. *Id.* After outlining the perceived issue, the government explained that it was "conduct[ing] investigation to determine whether charges are appropriate." *Id.*[2]

Relevant to the case at hand though, the government threatened, "in the event Mr. Bernal testifies at his 1325 trial, we intend to question Mr. Bernal regarding his misleading representations made to the Court." *Id.*

This motion follows.

### III.  MOTION TO DISMISS THE COMPLAINT

The government's interference with Mr. Bernal's right to testify violates due process. This due process violation, in conjunction with the other violations of Mr. Bernal's rights, warrants dismissal of his case.

**A.  The government violated Mr. Bernal's due process rights by deterring him from exercising his constitutional right to testify by threatening him with new charges and stating it will question him about these charges if he testifies.**

"It is well established that 'substantial government interference with a defense witness's free and unhampered choice to testify amount to a violation of due process." *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998)(quoting *United States v. Little*, 753 F.2d 1420, 1438). In *Webb*, the Supreme Court held that strong admonitions of perjury that deter a witness from testifying

---

[2] As counsel was drafting this motion, the government filed a motion permit to cross-examine of Mr. Bernal on its perceived misstatements. Nowhere in the motion did the government disclose to the court that it was investigating filing perjury charges against Mr. Bernal.

violate a defendant's due process rights. 409 U.S. 95 (1972). *Webb* dealt with the conduct of judges, but has been applied to prosecutors as well. *See Vavages*, 151 F.3d at 1189; *Little*, 753 F.2d at 1438. Certainly, the Sixth Amendment is not implicated every time a prosecutor or judge warns a potential defense witness of the penalty of perjury. *Id.* at 1189-90. Rather, a defendant's right are implicated when the prosecutor or judge employs coercive or intimidating language or tactics that "substantially interfere with a defense witness' decision whether to testify. *Id.*; *see also United States v. Harlin*, 539 F.2d. 679 (9th Cir. 1976).

The inquiry is "extremely fact specific." *Vavages*, 151 F.3d at 1190. Among the factors court should consider in determining the coercive impact of the perjury warnings are:

1) The manner in which the prosecutor raises the issue;
2) The language of the warning; and
3) The prosecutor's basis in the record for believing the witness might lie.

*Id.* "Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, **for example, by threatening the witness with prosecution for perjury or other offense**s." *Williams v. Woodford,* 384 F.3d 567, 601–02 (9th Cir. 2004)(emphasis added). For example, bringing "baseless" perjury charges may suffice to show prosecutorial misconduct. *Id.* at 602. The crux of the issue is the coercive impact of the government's actions.

In *Vavages*, the Ninth Circuit found that even though the prosecutor was justified in informing the defense witness (who would testify to the alibi of the defendant) of the consequences of perjury and there was no evidence of "badgering" of this witness, the combination of various aspects of the prosecutor's conduct violated due process. First, the prosecutor articulated "his belief that Manuel's alibi testimony would be false." This was improper because it was not just that the prosecutor was advising the witness that *if* she testified falsely, she

could be prosecuted, but that *he believed* she would be lying if she testified at all about the alibi and could be prosecuted. *Id.* at 1190-91. The Ninth Circuit found the mere fact the government did not believe her without a substantial basis to believe she was lying made this "threatened perjury prosecution" improper. *Id.* Secondly, the prosecution threatened to withdrawal Manuel's plea agreement in her own unrelated criminal case if she testified. *Id.* at 1191. Finally, the Ninth Circuit found that comments during the closing statements by the prosecutor, that the defense had not brought any adults to testify about his alibi (because Manuel did not testify after the perjury threats) his defense should be discounted. *Id*.

This Court should conduct the same kind of factual analysis under *Vavages*.

1. <u>The manner in which the prosecutor raises the issue.</u>

The manner in which the government is threatening perjury charges in this case is telling. In a case that has been set for trial twice now, on the eve of trial, the government informs counsel it is investigating perjury charges and if Mr. Bernal testifies it will question Mr. Bernal about the very investigation it is conducting. The situation is unique and more troubling than *Vavages* because the government has constructed a situation in which Mr. Bernal must choose between a constitutional right in this case and a constitutional right in a potential future case the government is holding over his head. Unlike *Vavages*, and other *Webb* cases where the witness is a third party, here the witness is Mr. Bernal. And more troubling than other cases, the government is not simply warning Mr. Bernal that if he testifies in this case falsely they would charge him with perjury (indeed, that would be an appropriate warning). Rather, the government is stating that it is going to charge him with perjury in the future and if he invokes his constitutional right in this case, the government is going to ask him about these potential future charges they are threatening.

This factor weighs in favor of Mr. Bernal.

1           2.      The language of the warning.

This factor is neutral. The government's "language" of the warning not of a "badgering" nature, however, that in and of itself does not end the inquiry. *See Vavages*, 151 3d 1190. As the Ninth held in *Vavages*, "though there is no intimation that the prosecutor berated or badgered Manuel or her counsel with admonishments against perjury, three aspects of the prosecutor's conduct gives us serious pause." *Id.*

         3.      The prosecutor's basis in the record for believing the witness might lie.

This factor weighs in favor of Mr. Bernal. Mr. Bernal never represented to the Court ████████████████████████████, because he was not able to do so. Counsel's motion for a continuance also did not state Mr. Bernal had not left his house. This was not the basis for the motion. ████████

████████

████████

████████

████████

Government counsel cannot impeach Mr. Bernal with statements he did not make. It knows this. In its most recent filing, only an hour ago, the government stated it ████████████████████████████

████████████. *See* Underseal Filing by Government September 30, 2020. Mr. Bernal made no such statements. The record is devoid of any statement. Understanding this stretch the government states, "Upon further review of Defendant's submission, his words appear artfully crafted to avoid directly stating ████████████." *Id.* ████████

████████

████████

1 ██████████████████████████████████████████████████
2 ████████████████████████████████████████. Impeachment occurs when
3 there is a prior inconsistent statement, and here that does not exist.

4     Rather, the government's desire to question Mr. Bernal about his quarantine
5 practices and signed declarations about COVID-19 exposure is an attempt to build
6 a case against Mr. Bernal for a completely unrelated case. A threatened charge and
7 investigation that the government did not mention to the Court in its *motion in*
8 *limine* to impeach Mr. Bernal. There is no basis to believe that Mr. Bernal will lie
9 or has lied and this factor cuts in favor of Mr. Bernal's motion to dismiss.

10     **B.**    **Additional Factors weighing in favor of dismissal.**

11     The three factors in *Vavages* are "among the factors" the Court should
12 consider. *Vavages*, 151 F.3d at 1190. The analysis is fact specific and there are
13 additional facts this Court should consider in determining whether to dismiss the
14 complaint based on the due process violations. The additional circumstance this
15 Court should consider is how the government arrived at this allegation in the first
16 place. It is the cumulative effect of the government's actions in this case that have
17 substantially impaired Mr. Bernal's Sixth Amendment rights.

18     At the motion hearing the morning before the scheduled trial date on August
19 12, 2020, defense counsel presented to the court a handful of discovery issues, most
20 importantly, the existence of documents that were discoverable under Rule 16 but
21 had not been disclosed despite counsel's request. Prior to the hearing, defense
22 counsel had emailed the government about these requests and had not received the
23 requested discovery. The document in question was an application for employment
24 authorization that would contain statements made by Mr. Bernal. The government
25 response to counsel's request was that there was no employment authorization card
26 application that "in conjunction with the cancellation application that he filed, that
27 the employment authorization card comes as result of someone seeking and filing
28 a cancellation application." *See* Ex. C, Transcript of Motion Hearing on August 24,

2020 at 19-20. Counsel pressed that her expert would testify that the only way to get one of these employment authorization cards would be through an I-765 application. *Id.* at 20-21. The court suggested the government look again over the lunch break prior to trial. *Id.* at 25. Over the lunch break, defense counsel received the two missing I-765 applications.

As a remedy, this Court offered Mr. Bernal a continuance of the trial so counsel could review the discovery and prepare for trial. Mr. Bernal accepted this remedy and trial was set for October 1, 2020.

In the last month, the government has conducted significant additional investigation. It claims this was based on reciprocal discovery provided the morning of trial "pertaining to [Mr. Bernal's] alleged employment." *See* September 30, 2020 Under Seal *In Limine* Motion by the Government. It is unclear why the government classifies the employment as "alleged" or why it only investigated Mr. Bernal's employment between the August trial date and tomorrow's trial. Mr. Bernal's A-file, which the government has had since January, contains pages and pages of pay stubs from 20/20 Plumbing and Heating in support of his application for cancellation. He uses his Employment Authorization Card – a document that has been a key issue in this case - to work at 20/20 Plumbing and Heating. And on the day of his arrest he described to the agents his "work truck." *Id.* These were not new facts.

Nevertheless, the government used this additional time to subpoena hundreds of pages of employment records for Mr. Bernal. As Mr. Bernal describes in his Motion to Quash, Dkt. No. 80, the government improperly used a 17(b) subpoena without a court order to obtain pre-trial disclosure of documents. *See* Dkt. No. 80. Mr. Bernal will not recount the entirety of the argument here, but vital to this argument is that Mr. Bernal believes that the government violated Rule 17 in the way it acquired Mr. Bernal's employment records. Most importantly, Mr. Bernal believes that had the government properly requested a 17(c) subpoena, Mr. Bernal

MOTION TO DISMISS BASED ON DUE PROCESS VIOLATION

could have raised the main issues with the Court (1) that the documents were not relevant and (2) even if the court found some of the documents were relevant, 6 ½ years of "all employment records" was certainly not specific enough (nor relevant) to the issue of whether Mr. Bernal was working on the date of his arrest.

Because the government did not file a 17(c) though, but still requested and received pre-trial disclosure of all of Mr. Bernal's employment records, we are now here. In a place where the government improperly obtained hundreds of irrelevant documents that it is now using to claim Mr. Bernal was trying to "artfully" craft his motion to continue his trial after his wife had contacted COVID-19. In a place where the reason the government had time to conduct this investigation in the first place is because it did not provide Rule 16 documents and Mr. Bernal requested a continuance to review the late disclosures. In a place where the government is putting Mr. Bernal in a position where he must to choose between his 6th Amendment right to testify in his own defense in this case and his 5th Amendment right to be free from self-incrimination in a threatened future case because the government wants to question him about the facts of that case.

"But while [the United States Attorney] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). Indeed, "it is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* At this point in Mr. Bernal's case, the government has left the land of legitimate means and repeatedly used improper methods. The consequence is the repeated violation of Mr. Bernal's constitutional rights.

### IV.   CONCLUSION

For these reasons, Mr. Bernal requests this court dismiss the complaint against him.

Respectfully submitted,

10                                                                           20MJ20169-JLB
MOTION TO DISMISS BASED ON DUE PROCESS VIOLATION

1-28 in left margin

Dated: September 30, 2020         *s/ Chandra L. Peterson*
                                  Federal Defenders of San Diego, Inc.
                                  Attorneys for MR. BERNAL-SANCHEZ

                                  Email: Chandra_Peterson@fd.org

11                                    20MJ20169-JLB
MOTION TO DISMISS BASED ON DUE PROCESS VIOLATION