**CHANDRA L. PETERSON**
California State Bar No. 306935
**SEAN C. MCGUIRE**
California State Bar No. 319521
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Chandra_Peterson@fd.org
Sean_McGuire@fd.org

Attorneys for MR. BERNAL-SANCHEZ

UNITED STASTES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JHONATHAN VILMAR BERNAL-SANCHEZ,<br><br>    Defendant. | CASE NO.:  20MJ20169-JLB<br><br>Hon. Jill L. Burkhardt<br>Date: October 15, 2020<br>Time: 9:00 a.m.<br><br>**REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO MR. BERNAL'S MOTION TO DISMISS** |

## I. INTRODUCTION

The government alleges that Mr. Bernal made a misrepresentation to this Court. The government seeks to simultaneously investigate Mr. Bernal for perjury prosecution and cross-examination Mr. Bernal based on this alleged misrepresentation. Based on the government's notification it was potentially charging Mr. Bernal with a new offense, would question him about this offense if he were to take the stand, and information on how the government obtained Mr. Bernal's employment records in the first place, Mr. Bernal moved to dismiss complaint.

1    In response, the government's main legal argument is that the *Webb*[1] line of

2    cases Mr. Bernal relied upon do not apply, and that the only guidance this Court

3    should look to is that of Fed. R. Evid. 608(b). Mr. Bernal agrees with the

4    government that the factual circumstances of the *Webb* cases are slightly different.

5    Those cases deal with the testimony of a defense witness, rather than the defendant

6    himself. However, the constitutional principles that underlie those cases though are

7    equally as applicable, if not more so, in the case of the defendant's choice to testify.

8    Consequently, the Court should follow the analysis in *Webb* and dismiss the

9    complaint.

10    But to reply to the legal arguments made by the government, Mr. Bernal must

11    clarify two factual issues. First, in its briefing here and elsewhere, the government

12    repeatedly refers to "misrepresentations" made by Mr. Bernal. The government

13    accuses Mr. Bernal of attempting to mislead the Court by stating he was ordered to

14    quarantine by a doctor, but not telling the Court he had not been following this

15    order. Mr. Bernal did not make any misrepresentations to the Court. His declaration

16    to this Court was that he was ordered to quarantine, not that he was quarantining.

17    Nor was his omission of this fact an attempt to mislead this court. Even if he had

18    included this fact in his declaration, the result would have been the same – he would

19    have been denied access into the courthouse and the trial would have had to been

20    continued. This was not only because he had been ordered to quarantine, but also

21    because he had been in contact with someone who had tested positive for COVID-

22    19.

23    Second, the government argues that its use of its "trial subpoena" was

24    appropriate and as such should not be of any consequence to Mr. Bernal's motion

25    to dismiss. It argues that because it did not "require" the custodian turn over the

26    records advance of trial, the custodian simply did this "voluntarily." In its argument

27

28    _____

[1] *United States v. Webb*, 409 U.S. 95 (1972).

though, the government does not address Attachment A, which clearly states the custodian may satisfy the terms of the subpoena by emailing or mailing the records ahead of trial to the government, rather than bring them to trial. Nearly this same factual situation occurred in *United States v. Vo*, where the court held that this kind of "invitation" for pretrial disclosure amounted to a 17(c) subpoena *duces tecum*, and without an order from the court, this was an improper use of a subpoena.  53 F. Supp. 3d 171 (D.D.C. 2015).

The government's misuse of the subpoena, coupled with the interference with Mr. Bernal's right to testify, and the Rule 16 violations that led to the addition investigation time before trial in the first place that warrant dismissal in this case.

## II.  REPLY TO THE GOVERNMENT'S RESPONSE

Mr. Bernal first addresses the two factual issues and then moves to why this Court should apply the *Webb* analysis and dismiss the case.

### A.  Mr. Bernal has not made any misrepresentations to the Court and when placed in proper context, his omission of not informing the court he was still going to work was not misleading.

The   government   argues   that   Mr.   Bernal   has   made   "misleading representations" to this court, about his "quarantine status." Gov. Br. at 1.

But "in reality, as he now admits, he was not quarantining at all." *Id.* In support of its argument the government writes, "[i]t is also a mystery why they mentioned the quarantine order at all if the only relevant fact was that Defendant was exposed to someone with COVID-19-not that he was following a quarantine order. In sum, Defendant's explanation certainly does not show that there was no basis in the record for concluding that he made misleading representations to the Court."  Gov. Br. at 13.

The government is incorrect in its assertions. Mr. Bernal did not make any misrepresentations to the Court and he did not omit his failure to quarantine in an

attempt to mislead the Court. For the motion to continue, there were two equally dispositive facts that mandated the continuance of the trial. First, that Mr. Bernal had been ordered by a doctor to quarantine. Second, that Mr. Bernal had been in contact with someone diagnosed with COVID-19. That he was still working under these circumstances could not have changed these two facts that precluded entry into the courthouse, and eliminated any need reference work attendance in his declaration or counsel's motion to continue.

In fact, the Chief Judge's Order 29 clearly contemplates this exact situation – one in which someone has been ordered to quarantine, but is not following that order:

> Court Security Officers (CSOs) will screen all visitors entering the court as required by Order of the Chief Judge No. 17-A (Visitor Restrictions). No person who is **or should be in quarantine** is authorized to enter the court. No person who has a fever, cough, or other symptoms of COVID-19 may enter the court.

Chief Judge's Order 29 at 2, ¶ 4 (emphasis added). It does not matter if someone "is or should be in quarantine," the Chief Judge's order prohibits person from being allowed into the courthouse. It is not a "mystery," as the government suggests, why Mr. Bernal mentioned the quarantine order. Rather it was one of two reasons why Mr. Bernal would not be admitted entrance into the courthouse for his trial.

The second, just as equal reason, Mr. Bernal would not have been admitted entrance was because of the direct exposure Mr. Bernal had with COVID-19. Chief Judge's Order 17-A lists as a person who "will not enter any federal courthouse," anyone who has "been diagnosed with, **or have had contact with**, anyone who has been diagnosed with the coronavirus." Chief Judge's Order 17-A at 1-2 (emphasis added). As such, even if Mr. Bernal had made no mention of the order to quarantine, he still would have been refused entrance at the courthouse based on this reason alone. It was sufficient that he had been having constant contact with someone who was positive for COVID-19. That would be enough to have warranted a continuance regardless of work attendance.

1    Put simply, Mr. Bernal declaring that he was ordered by a doctor to

2    quarantine but was still going to work would not have impacted his ability or

3    inability to enter the courthouse. Because this information was irrelevant to whether

4    he was a health risk to those in the court, it was not included in his declaration. It

5    was not an attempt to mislead this Court nor was it a misrepresentation.[2]

6    **B.    The custodian of records did not give the records to the
         government on her "own volition," she provided them as directed**

7         **in Attachment A.**

8         The government also argues that it did not "require" the custodian of records

9    to disclose the materials prior to trial and that the custodian simply "voluntarily"

10   provided them beforehand. It infers that this was acceptable because it "promptly

11   disclosed" the documents to Mr. Bernal. This argument completely ignores

12   Attachment A to the subpoena.

---

[2] It must be noted that if the Court were to agree with the government that the omission of work history from the declaration and motion to continue constitutes a "misrepresentation" then it is doubtful Federal Defenders can continue representing Mr. Bernal. Before allowing Mr. Bernal to be cross-examined on these events, the Court would need to decide who was responsible for the omission, Mr. Bernal or defense counsel. Not only would defense counsel necessarily be a potential witness as to what Mr. Bernal said and when, but counsel "cannot reasonably be expected to make" an argument that "denigrate[s] their own performance" and "threatens their professional reputation and livelihood." *Christeson v. Roper*, 574 U.S. 373, 378 (2015). In other words, Mr. Bernal would be in need of conflict free counsel to ensure he was properly advised about his right to testify and to advocate that he was not responsible for the omission.

Figure 1: Attachment A

As can be seen in the actual attachment, Attachment A provides instructions to the custodian of records. The subpoena cover refers directly to Attachment A in the section detailing what documents to produce. Attachment A provides what information to gather and turn over, how one can turn over the records, and what to include with the records when turning them over. *See* Figure 1. In the light most favorable to the government, Attachment A conflicts with the language on the first page of the subpoena that reads the individual is "commanded to bring with you the following documents or objects." In the light least favorable to the government, Attachment A is read as instructions that in order to comply with the subpoena one should be sending these documents ahead of time to Connie Munoz with the U.S. Attorney's office. In either situation though, the language of the Attachment A suggests one way to comply with the subpoena is pretrial disclosure straight to the government. This is what is improper.

A court found a similar situation improper in *United States v. Vo,* 53 F. Supp. 3d 171 (D.D.C. 2015). *Vo* dealt with a conspiracy to commit visa fraud. In its investigation, the government issued subpoenas for visitation logs, call logs and

recorded telephone calls for two of the defendants who had previously plead guilty.[3] The defendants who were litigating the case moved to quash these subpoenas. Just as in this case, the subpoenas in *Vo* were made returnable on the dates of trial, were not approved by the court, and included language that allowed the custodian of records to comply with the subpoena by providing the documents requested to the prosecutor. *Id.* at 174-75. The defendants argued that Rule 17 was "abused and the subpoenas should therefore be quashed." *Id.* at 178. The court agreed.

In its ruling, the court held that it was a violation of Rule 17 for the prosecutor to issue a subpoena for witness testimony and document production at trial but to simultaneously invite pretrial production of records directly to the U.S. Attorney's office. *Id.* at 178-180. The court found that "the subpoenas at issue here directed the appearance of CTF at what was then scheduled to be a trial date," and in that respect, the subpoenas "appeared to comply with Rule 17." *Id.* However, the government erred, when it suggested the custodian could comply with the subpoena by sending the documents directly to the government and potentially avoiding having to come into trial. *Id.* The Court found this "standard practice" could not be reconciled with Rule 17. *Id.* at 178-79. The Court reasoned that this was important is because "a subpoena is issued by a court, bears a court's seal, and is backed by the threat of court-imposed sanctions for non-compliance." *Vo,* 78 F. Supp. 3d 171, at 180. Additionally, Rule 17 subpoenas are not meant to be discovery tools. *Id; United States v. Nixon* 418 U.S. 683, 689-99 (1974).

---

[3] In its response to Mr. Bernal's motion to quash the government argues that Mr. Bernal does not have standing and the issue is moot. Both of these issues were also addressed in *Vo*. As to the issue of standing, the *Vo* court held that even though the defendants likely had standing because it infringed on their rights, but it did not matter because the Court had an independent obligation to enforce Rule 17 regardless of standing. *Vo*, 78 F. Supp. 3d at 175. The government also argues in its motion to quash that the mootness doctrine "likely prohibits" Mr. Bernal's motion. Gov. Br. at 6 n.4. *Vo* addressed this. *Vo* held the very case the government argues should not apply to criminal cases, *Church of Scientology*, should apply because the government had the records in its custody still and the issue was not moot. *Vo*, 78 F. Supp. 3d at 176-77.

1    The government here suggests that the custodian "voluntarily" provided the
2    documents after being issued the subpoena and because of this, there was no
3    violation of Rule 17. First, this is not true. The government issued a subpoena that
4    described a process for returning the documents: mail or email them to the
5    government directly. *Vo* described this conduct as an "invitation" to send records
6    and held this was still improper. *Id* at 179-80. Whether or not the government
7    merely **invited** the custodian of records to produce records pretrial or **required**
8    them to, the result is the same: records were produced in advance of trial. *Id. Vo*
9    held the very distinction between a witness subpoena and a subpoena *duces tecum*
10   is the pretrial production of documents in the latter. Pretrial production requires
11   advanced approval from the court. *Id;* Local Rule 17.1(b). The reasoning behind
12   this makes sense – it is the Court's role to ensure that subpoenas that allow for
13   pretrial production of documents – some of which may contain personal and
14   protected information – is not misused and that the *Nixon* factors (relevancy,
15   admissibility, and specificity) are met before pretrial production of documents are
16   made.

17          An even more important point is that not even a subpoena *duces tecum* would
18   allow the government to request pretrial production of documents be sent directly
19   to the US Attorney's office, as it did in Attachment A. The pretrial production of
20   documents, under the Local Rule, "must be returnable and the items sought
21   thereunder must be produced before the magistrate judge." Local Rule 17.1(b). In
22   both cases – the "trial subpoena" or the 17(c) subpoena - the documents are
23   produced directly to the court or in the presence of the court. The court is there to
24   be the arbitrator and gatekeeper of this information – determining what is relevant,
25   admissible and specific.

26          The government's distinction between a subpoena that lists an invitation to
27   submit documents pretrial directly to the government or requires pretrial production
28   makes no difference. *See Vo* 78 F. Supp. 3d at 178-80. Neither would be appropriate

MR. BERNAL'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION

1    without a 17(c) subpoena issued from the Court after the Court conducted a *Nixon*

2    analysis. Nor would a "trial subpoena" or a 17(c) subpoena ever allow for a witness

3    to directly disclose pretrial documents to the government. Court involvement would

4    occur either at the date and time set for the hearing or in the case of a 17(c)

5    subpoena, and the court would make the documents "available for the inspection of

6    the parties and the attorneys." Local Rule 17.1(b).

7        As such, the government violated Rule 17 in obtaining the documents in

8    which it now seeks to impeach Mr. Bernal.

9

**C.    The government has violated Mr. Bernal's due process rights by chilling his right to testify in his own defense.**

10

11        Finally, the government argues that the *Webb* and *Vavages*[4] line of cases is

12    inapplicable to the situation at hand because the government has invoked Rule

13    608(b) and did not threaten Mr. Bernal with *future* perjury charges if he should

14    testify. Mr. Bernal does not disagree that the *Webb* and *Vavages* line of cases deal

15    with a slightly different factual situation[5]; however, the legal reasoning for finding

16    due process violations in those cases is equally applicable to this factual situation –

17    if not more applicable. As such, this Court should grant his motion.

18        The *Webb* progeny deals with instances where the government chills a

19    defense witness from testifying by threatening them with perjury charges if they

20    were to choose to testify. Mr. Bernal laid out some of the factors courts consider

21    when determining what kind of circumstances would rise to this level, but the Ninth

22    Circuit has explained the list in *Vavages* is not exclusive. The *Webb* cases do not

23    deal with a defendant who has had his right to testify chilled, rather they deal with

24

25    [4] *United States v. Vavages*, 151 F. Supp. 3d 1185 (9th Cir. 1998).

26    [5] Mr. Bernal could not find a comparable factual case where he government told a defendant on the eve of trial that they believed he had committed perjury on a matter
27    unrelated to the case and not only were they going to investigate this to determine if they were going to charge him, this investigation would not occur prior to trial
28    but they would nevertheless question him about this alleged conduct if he were to take the stand at trial.

1    witnesses the defendant intends on calling who are scared away from testifying
2    because of the government's handling of perjury advisals.

3         The reason why it is not acceptable for the government to "substantially
4    interfere with the testimony of defense witnesses" is because this amounts to
5    depriving a defendant from his Sixth Amendment right to a fair trial. *United States*
6    *v. Juan*, 704 F.3d 1137, 1141 (9th Cir. 2013); *United States v. Vavages*, 151 F.3d
7    1185, 1188 (9th Cir. 1998). The aspect of the Sixth Amendment that is at question
8    in the *Webb* cases is the right to compulsory process and the right to present a
9    defense. So while the situation here is surely factually different than the *Webb*
10   cases, the same principles apply. The same constitutional projections apply equally,
11   if not more when the government interferes with a defendant's right to testify in his
12   own defense – a cherished constitutional right.

13        But why would anyone testify – defendant or defense witness - where the
14   government says the truth could result in charges and at a minimum somehow show
15   you are untruthful? Put another way, the government has told Mr. Bernal that if he
16   testifies consistent with the statements in his declaration, it will investigate him for
17   a crime and accuse him of being untruthful under Rule 608(b). Invoking his Fifth
18   Amendment right to refrain from self-incrimination does not help him in this
19   situation, because it suggests to the government he has something to hide and as
20   such the government solidifies its resolve to investigate him further for the alleged
21   perjury. The only way out of this catch-22 for Mr. Bernal is to not testify at all. It
22   is this situation, created by the government, which interferes with Mr. Bernal's right
23   to testify.

24        A similar situation occurred in *Vavages*, 151 F.3d at 1190. In *Vavages*, the
25   prosecutor met with a defense witness that the defendant was planning to call for
26   alibi testimony. The prosecutor "combined a standard admonition against perjury –
27   that Manuel could be prosecuted for perjury in the event she lied on the stand – with
28   an unambiguous statement of his belief that Manual **would be lying** if she testified

1   in support of Vavages' alibi." *Id.* (emphasis in original). The Ninth Circuit was
2   "concerned" by this advisal and found that the statement that the prosecutor
3   believed that the witness would be lying if she testified in a way she was claiming
4   was truthful was really a "thinly veiled attempt to coerce a witness off the stand."
5   *Id.*

6          Mr. Bernal finds himself in a similar situation. He has truthfully provided the
7   court with information and would testify to that information if cross-examined by
8   the government. This is the very information the government has not only alleged
9   it does not believe, but also told Mr. Bernal it is investigating for perjury charges.
10  As the Ninth has held, this constitutes substantial interference in Mr. Bernal's
11  decision to testify. *Id.*

12         In defense of its dismissal of the *Webb* cases, the government refers to its
13  desire to question Mr. Bernal about this alleged conduct as a "mine-run invocation"
14  of Rule 608(b), to which the rights afforded by the *Webb* cases do not apply. Gov.
15  Br. at 11. Invoking 608(b) does not rid the situation of the due process issues
16  though. If this were the case, the line of *Webb* cases would never exist in the first
17  place because 608(b) applies equally to all witnesses, not just defendants.

18         At the end of the day, it is all of the circumstances of this case combined that
19  create the due process violation. The government has threatened Mr. Bernal with
20  charges of perjury based on his truthful declaration, told him that they were going
21  to investigate this alleged crime, but not before trial, and then told Mr. Bernal that
22  if he were chose to exercise his right to testify at trial that the government would
23  question him about this alleged conduct for which they were debating charging him
24  with a crime. These issues are worsened by the fact that the only reason the
25  government has the work records it is relying on in the first place is because it
26  served a subpoena that directed the custodian of records to send the requested
27  documents directly to the government without first obtaining a 17(c) subpoena from
28  this Court.  Had the government properly requested a 17(c) subpoena, the records

1  would have been delivered to the Court, not the government. Then, Mr. Bernal
2  would have raised the main issues with the Court (1) that the documents were not
3  relevant and (2) even if the court found some of the documents were relevant, 6 ½
4  years of "all employment records" was certainly not specific enough (nor relevant)
5  to the issue of whether Mr. Bernal was working on the date of his arrest.

6       Because of these combination of circumstances, this Court should dismiss
7  the case as a violation of Mr. Bernal's due process rights.

## III.   CONCLUSION

9       For these reasons, and the reasons detailed in Mr. Bernal's motion to dismiss,
10  he requests this Court grant his motion.

                  Respectfully submitted,

Dated: October 14, 2020       *s/ Chandra L. Peterson*
                              Federal Defenders of San Diego, Inc.
                              Attorneys for Mr. Bernal-Sanchez
                              Email: Chandra_Peterson@fd.org